UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DALE H. SWICEGOOD,           )
                             )
            Plaintiff,       )
                             )
                             )
v.                           )        3:07-CV-339
                             )        (VARLAN/SHIRLEY)
                             )
MICHAEL J. ASTRUE,           )
Commissioner of Social Security,     )
                             )
            Defendant.       )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal

Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding

disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in

Support [Docs. 12 and 13] and Defendant's Motion for Summary Judgment and Memorandum in

Support [Docs. 14 and 15]. Plaintiff Dale H. Swicegood ("Plaintiff") seeks judicial review of the

decision of the Administrative Law Judge, the final decision of Defendant Commissioner.

On November 19, 2004 and December 2, 2004, respectively, Plaintiff filed an application

for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), claiming

disability as of August 25, 2004 (Tr. 73-75; 63-67). After his applications were denied initially and

upon reconsideration, Plaintiff requested a hearing. On February 21, 2006, a hearing was held

before an Administrative Law Judge ("ALJ") to review determination of Plaintiff's claim (Tr. 256-

69). At the hearing, testimony was heard by Plaintiff and Katharine Bradford, a Vocational Expert

("VE"). On April 13, 2006, the ALJ issued a decision finding that Plaintiff was not disabled because

he could perform a significant number of jobs in the national economy (Tr. 17-24). On July 6, 2007, the Appeals Council denied Plaintiff's request for review (Tr. 5-7), thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ Findings

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 C.F.R. § § 404.1520(b) and 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: disorders of the back with history of pain radiating to the hips and legs, status-post 3 surgeries (20 C.F.R. § 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § § 404.1520(d), 404.1525, 404.1526. 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to walk a total of 2 hours during an 8-hour workday, stand a total of 2 hours during an 8-hour workday, and sit a total of 6 hours during an 8-hour workday. He can occasionally lift/carry 10 pounds, and can frequently lift/carry less than 10 pounds. He can perform no climbing of ramps/ladders/ropes, and can occasionally climb stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. He is precluded from work around

heights, hazardous machines, temperatures extremes, dust, fumes, or gases. He experiences moderate pain with moderate loss of concentration. He is able to perform simple routine repetitive tasks. These exertional and non-exertional limitations are commensurate with a residual functional capacity for a significant range of sedentary work.

6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565 and 416.965).

7. The claimant was born on October 25, 1963 and was 40 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 C.F.R. § § 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § § 404.1564 and 416.968).

9. Transferability of job skills is not material to the determination of disability due to the claimant's age (20 C.F.R. § § 404.1568 and 416.964).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. § § 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a "disability" as defined in the Social Security Act, from August 25, 2004 through the date of this decision (20 C.F.R. § § 404.1520(g) and 416.920 (g)).

(Tr. 19-23).

## II.    Disability Eligibility

An individual is eligible for SSI benefits on the basis of financial need and either age,

blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment

3

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work, which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.150). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that

there is work available in the national economy that the claimant could perform.  Her v. Comm'r of

Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).


**III.     Standard of Review**

In reviewing the Commissioner's determination of whether an individual is disabled, the

Court is limited to determining whether the ALJ applied the correct legal standards and whether

there is substantial evidence in the record to support the ALJ's findings.  Longworth v. Comm'r of

Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005).  If the ALJ's findings are supported by substantial

evidence based upon the record as a whole, they are conclusive and must be affirmed.  Warner v.

Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g).  Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales,

402 U.S. 389, 401 (1971)).  It is immaterial whether the record may also possess substantial

evidence to support a different conclusion from that reached by the ALJ or whether the reviewing

judge may have decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d

450, 453 n.4 (6th Cir. 1986).


**IV.     Arguments**

Plaintiff moves for summary judgment, arguing that the ALJ erred by:  ignoring the medical

findings and observations of his treating physicians; substituting his own medical judgment for the

judgment of his treating physicians; finding his ailments of hypertension, diabetes, sleep apnea, and

obesity "non-severe"; and finding his testimony not fully credible.  Plaintiff further contends the

ALJ's residual functional capacity ("RFC") is not supported by substantial evidence and that the hypothetical presented to the VE was incomplete [Doc. 13].

The Commissioner, in response, contends substantial evidence supports the ALJ's RFC determination regarding Plaintiff's ability to perform a range of sedentary work. The Commissioner argues that the ALJ's credibility finding is well-supported by the objective medical evidence of record and should be accorded due deference. As to Plaintiff's argument regarding the hypothetical posed to the VE, the Commissioner argues the hypothetical was well-supported, thus the VE's response constitutes substantial evidence to support the ALJ's finding Plaintiff capable of performing a range of sedentary work [Doc. 15].

### A. Evaluation of Medical Opinion Evidence

Plaintiff contends the ALJ erred in failing to accept, and even mention, the findings and observations of the doctors who treated him for chronic back pain: Dr. Davis, Dr. Culbert, and Dr. Dykes. Plaintiff argues the examinations by these doctors are consistent with Dr. Johnson, the consultative examiner, whose opinion the ALJ found "excessive given the other objective evidence of record and therefore cannot be given great weight" (Tr. 21). The Commissioner, in response, does not challenge Plaintiff's designation of these doctors as treating sources, but argues the ALJ has not committed error since two of the medical reports were referenced by the ALJ in his opinion, and although Dr. Dykes's report is not mentioned, Plaintiff fails to point to anything in Dr. Dykes's records which would support a different outcome.

ALJs are required to evaluate every medical opinion of record, regardless of its source. See 20 C.F.R. § 404.1527(d); SSR 96-5p ("Opinions from any medical source about issues reserved to the Commissioner must never be ignored."). The treating physician's opinion is given particular

weight because of his "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). This requires a relationship of both duration and frequency. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

In determining whether a physician's opinion is entitled to controlling weight, the Social Security Administration regulations look to the "[l]ength of the treatment and the frequency of the examination," and the "[n]ature and extent of the treatment relationship" 20 C.F.R. § 404.1527(d)(2)(i),(ii). A physician's opinion is deemed entitled to special weight as that of a "treating source" when he has seen the claimant "a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment," taking into consideration "the treatment the source has provided" and "the kinds of examinations and testing the source has performed or ordered from specialists and independent laboratories." Id. The ALJ must "always give good reasons" in the decision for the weight given to the treating source's opinion, 20 C.F.R. § 404.1527(d)(2), and "cannot arbitrarily substitute his own judgment for competent medical opinion." McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir. 1893).

As explained by the Social Security Administration, when the ALJ's determination:

> is not fully favorable, *e.g*., is a denial ... [,] the notice of
> determination of decision must contain specific reasons for the
> weight given to the treating source's medical opinion, supported by
> the evidence in the case record, and must be sufficiently specific to

> make clear to any subsequent reviewers the weight the adjudicator
> gave to the treating source's medical opinion and the reasons for that
> weight.

SSR 96-2p.

Even if a doctor is not considered a treating physician, the ALJ is still required to consider that opinion. See 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive"); SSR 96-5p. The regulations require the ALJ to consider several specific factors in weighing a medical opinion - namely, the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. See 20 C.F.R. § 404.1527(d)(1)-(6).

Finally, the findings of a "State agency medical or psychological consultant or other program physician or psychologist can constitute substantial evidence to challenge the opinions of a claimant's treating physicians." 20 C.F.R. § 404.1527(f)(2)(ii). However, when the ALJ rejects a treating physician's opinion as to the nature and severity of the claimant's impairments in favor of the opinion of a consulting physician, the hearing determination must reflect that the ALJ evaluated the consultant's findings using the relevant factors enumerated in the treating physician regulations, such as:

> the [consultant's] medical speciality and expertise in [Social Security
> Administration] rules, the supporting evidence in the case record,
> supporting explanations provided by the [consultant], and any other
> factors relevant to the weighing of the opinions. Unless the treating
> source's opinion is given controlling weight, the [ALJ] must explain
> in the decision the weight given to the opinions of a [consultative
> physician], as the [ALJ] must do for any opinions from treating
> sources, non treating sources, and other non-examining sources who
> do not work for us.

20 C.F.R. § 404.1527(f)(2)(ii).

With this framework in mind, the Court will endeavor to address Plaintiff's objections to the ALJ's treatment of the opinions of his physicians, Dr. Davis, Dr. Culbert, and Dr. Dykes, consultative examiner, Dr. Johnson, and state agency reviewing physician, Dr. Juliao.

### 1.    Dr. Davis

The record reflects two separate treatment notes prepared by Dr. Davis (Tr. 249).  One of the notes is undated; however, it is reasonable to assume the undated treatment note was prepared after February 21, 2006 since the treatment note from February 21, 2006 indicate "Dr. Dykes is getting ready to give him a spinal cord stimulator" (Id.)  ("The patient is in this afternoon for followup on his back pain.  I do have records from Dr. Michael Dykes indicating the spinal cord stimulator is indeed in the process of authorization") (Id.).  The February 21, 2006 treatment note also reveals Dr. Davis had not treated Plaintiff since March 2005 ("I have not seen him since March of 2005, but he states he has been seeing Dr. Dykes over the past year who has done some lumbar epidural steroids") (Id.).  In February 2006, Dr. Davis reported Plaintiff "moderately tender through the low back. ... [c]hronic low back pain, ... with persistent radicular-type symptom primarily to the left. ... significant tenderness throughout the lumbar paraspinous area, ... [s]traight leg raises increase pain bilaterally" (Id.).  Yet, the ALJ's only acknowledgment of Dr. Davis's treatment of Plaintiff was that "[a]fter being discharged from the practice of Dr. Culbert, the claimant began treatment with Dr. Davis" (Tr. 21).  While the Court acknowledges that the medical records prepared by Dr. Davis do not appear to support a finding of disability, the ALJ, nevertheless, should have considered them, and explained his reasons for accepting or rejecting the opinion.

### 2.    Dr. Culbert

The record contains treatment notes prepared by Dr. Culbert dated July 17, 2003 (Tr. 201) through March 9, 2005, where Dr. Culbert noted Plaintiff was "discharged from the clinic considering his last note from March 4th where he had admitted to taking the Avinza (extended release Morphine) and the Clonazepam on a regular basis.  He has got a negative urine drug screen for both benzodiazepines and opioids" (Tr. 191).  Dr. Culbert's treatment notes also reveal Plaintiff received treatment from him for "chronic low back pain [and] diabetes" (Id.).  On March 4, 2005, Dr. Culbert noted Plaintiff was "here for a rather severe visit ... his sugars have been rather erratic ... is taking Clonazepam on a regular basis without much luck with his pain ... lower back shows tenderness on palpation ..." (Id.).  Earlier treatment notes document Plaintiff seeing Dr. Culbert on January 18, 2005 for "follow up on his pain ... is still having quite a bit of trouble" (Tr. 192) and on February 1, 2005 for "continued pain with surgical back" and Dr. Culbert noted "[p]alpation of his back show pain that is fairly exquisite at lowest lumbar spinous" (Id.).  Yet, the ALJ's only acknowledgment of Dr. Culbert's treatment notes is in reference to Plaintiff being "dismissed [from the practice] because he had a negative urine drug screen for 2 months while he was reportedly taking his medication" (Tr. 21).  Dr. Culbert appears, to this Court, to be a treating physician, and even if not, the ALJ was required to consider his opinion and more fully explain his treatment of it.

### 3.    Dr. Dykes

The record also contains treatment notes from Dr. Dykes, showing Plaintiff saw him on four different occasions (Tr. 239-46).  Plaintiff underwent an initial evaluation on September 28, 2005, in which Dr. Dykes noted "positive tenderness in his back with elevation of the left lower extremity ... demonstrated scar tissue particularly on the left side with nerve root at L4-S1 and L4-5" (Tr. 245-

46). Dr. Dykes also noted in the September 28 treatment note that he planned to "[d]iscuss spinal cord stimulator as well as epidural" (Tr. 246). On October 17, 2005, Plaintiff returned to Dr. Dykes's office for a "[t]ransforaminal epidural steroid injection at S1 on the left under fluroscopy" (Tr. 241) and on November 14, 2005, Dr. Dykes performed a "[c]audal epidural steroid injection under fluroscopy" (Tr. 236). Yet, the ALJ failed to mention the procedures performed by Dr. Dykes in his opinion, although he acknowledged that Plaintiff testified he was to receive a spinal cord stimulator (Tr. 21).

### 4. Dr. Johnson

Dr. Johnson performed a consultative examination on March 24, 2005 (Tr. 181). His report describes an impression of "chronic severe low back pain", morbid obesity, and sleep apnea (Tr. 184). In addition, he stated, in regard to Plaintiff's work recommendations, that Plaintiff "should be able to sit for four hours during an eight-hour day with breaks for changing position, stand or walk for one hour during an eight-hour day, and lift weights from a seated position only" (Id.). The ALJ chose not to credit Dr. Johnson's opinion in light of Dr. Johnson "only examin[ing] this claimant on this one occasion and has not had the benefit of building an ongoing treatment relationship with the claimant" and further found his opinion "excessive given the other objective evidence of record" (Tr. 21).

### 5. Reviewing State Agency Physician

On May 12, 2005, Dr. Juliao, M.D., a state agency reviewing physician, assessed Plaintiff's residual functional capacity based on his review of the record of medical evidence (Tr. 231-38). Dr. Juliao concluded that Plaintiff can occasionally lift and/or carry ten pounds and frequently lift and/or carry less than ten pounds; stand and/or walk at least two hours in an eight hour work day; sit for

about six hours in an eight hour work day; and is unlimited in his ability to push and/or pull (Tr. 232). Dr. Juliao further found Plaintiff incapable of climbing a ladder/rope/scaffolds, but can occasionally climb a ramp or stairs (Tr. 233). He also found Plaintiff capable of occasionally balancing, stooping, kneeling, crouching, and crawling (Id.). Dr. Juliao found Plaintiff did not suffer any manipulative, visual, or communicative limitations (Tr. 234-35) Dr. Juliao also found Plaintiff suffered no environmental limitations expect that he should avoid concentrated exposure to vibration and hazards (*i.e.*, machinery, heights, etc.) (Tr. 235). The ALJ adopted Dr. Juliao's opinion, even in light of Dr. Juliao admitting it was different than opinions given by treating/examining sources (Tr. 22; 237). The ALJ found Dr. Juliao's opinion "more consistent with the clinical signs and diagnostic findings of record" (Tr. 22).

Significantly, in his written determination, the ALJ briefly mentioned that Plaintiff received treatment from Dr. Davis and Dr. Culbert and did not even mention Dr. Dykes's treatment of Plaintiff and his assessment of Plaintiff's chronic back pain. Citing Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535-36 (6th Cir. 2001), Defendant argues the ALJ did not commit reversible error in regard to Drs. Davis and Culbert since the ALJ referenced their medical records in his opinion. However, this Court finds the Heston decision distinguishable from the pending matter. In Heston, the Sixth Circuit found the ALJ committed harmless error by not referencing the physician's report since the physician at issue had not examined Mr. Heston during the period of alleged disability. 245 F. 3d at 535-36. Furthermore, the Sixth Circuit noted the error was not harmless since the hypothetical the ALJ posed to the vocational expert incorporated the limitations the treating physician included in his treatment notes. Id. The Court finds none of the factors the Sixth Circuit identified in Heston are present in this case. The Court further finds although the ALJ referenced

Drs. Davis's and Culbert's medical records, he did not indicate whether he considered any of the relevant factors set forth in the Regulations for weighing state agency reviewing physician opinions against the opinions of treating and examining sources, such as the length, nature, or extent of any particular treatment relationship, whether or not the medical consultants had any particular specialities or expertise in making Social Security disability determinations, or any other factor that might help clarify the reasons for the little consideration he gave to Dr. Davis's and Dr. Culbert's opinions.

As to Dr. Dykes's treatment notes, the Court finds the ALJ's failure to even mention his treating Plaintiff was in error. The ALJ may not simply ignore evidence of factors that may contribute to Plaintiff's disability determination. The ALJ must consider the entire record in accordance with his duty under 20 C.F.R. § 404.1527. See Lopez v. Sec'y of Dep't of Health & Human Servs., 728 F.2d 148, 150-51 (2d Cir. 1984) ("We have remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him."). While Defendant argues remand for failure to mention Dr. Dykes's treatment notes is unnecessary since "nothing in Dr. Dykes's records ... would support a change in the RFC," [Doc. 15 at 12], the Court points to the language in Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 546 (6th Cir. 2004), which states "[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." (quoting Mazaleski v. Treusdell, 562 F.2d 701, 719 n.41 D.C. Cir. 1977). The Sixth Circuit further stated:

> To hold otherwise and to recognize substantial evidence as a defense to non-compliance [with agency regulations], would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to "set

13

aside agency action ... found to be ... without observance of procedure
required by law."

Id. (citing Administrative Procedure Act, 5 U.S.C. § 706(2)(D) (2001)).

In this Court's view, the ALJ's assessment of the opinions provided by treating and consultative sources in this case, considered with his failure to even mention Dr. Dykes's treatment notes, falls short of the Social Security Administration's requirements for evaluating the opinions of medical sources as outlined above. When the opinions of treating and examining sources which reflect the nature and severity of the claimant's impairments are rejected or not even addressed in favor of non-treating sources, the written decision must make the ALJ's reasons sufficiently clear to allow for meaningful review. This was not done here.

Based on this analysis, and upon careful review of the entire administrative record, the Court finds that the ALJ's determination was based on an erroneous application of the regulatory requirements for assessing the medical opinion of Plaintiff's treating and examining sources, with the result that the ALJ improperly avoided discussion and analysis of probative evidence - namely, the opinions of Dr. Davis, Dr. Culbert, and Dr. Dykes reflecting their judgments about the nature and severity of Plaintiff's impairments.

### B. *Substituting His Own Medical Judgment for the Judgment of the Treating Physicians*

It is well-settled that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion ... while an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir. 1983) (internal quotation marks and citations

omitted). Plaintiff argues the ALJ interjected his own medical opinion as to the x-rays of his lumbar spine and "essentially ignored the MRI results" [Doc. 13 at 14]. The Court disagrees with Plaintiff's assertion and does not find his objection well taken.

As to the ALJ's analysis regarding x-rays of the lumbar spine, the ALJ disbelieved Plaintiff's claim that he suffered chronic back pain "that would cause the limitations and symptoms alleged by the claimant" and instead found the x-rays "indicate[d] reason for some limitation, [but] do not show that they would limit the claimant to such a degree as to preclude all work activity" (Tr. 21). The ALJ carefully considered the all the medical evidence, citing Dr. Summers's review of the x-ray ("Lumbar spine x-ray: two views of the LS spine are obtained. There is normal vertebral body alignment. The vertebral body heights and intervertebral disc spaces are well maintained. The sacroiliac joints demonstrate mild reactive sclerosis. Mild degenerative changes are noted.") (Tr. 186). In referencing Dr. Summers review of the x-ray, the ALJ cited to objective medical evidence and did not overstep "his bounds into the province of medicine". See Miller v. Charter, 99 F.3d 972, 977 (10th Cir. 1996).

Although Plaintiff claims the ALJ ignored the MRI results, the Court points to the ALJ's discussion of the results in his opinion (Tr. 21). In regard to a MRI obtained April 4, 2005, the ALJ stated it "showed vertebral body height and alignment well maintained. No compression abnormality and no malalignment" (Tr. 21; 161). In fact, the ALJ devoted a whole paragraph in his opinion highlighting the MRI results, which show mild abnormalities such as "scar tissue", "hypertrophy", and "mild encroachment", but also reveal "no[] result in significant narrowing of the spinal cord" and "no evidence of residual or recurrent herniated disc material" (Id.; 160-61). Although Plaintiff cites to a notation by Dr. Davis that the MRI was "abnormal" (Tr. 206), the ALJ

determined, in reviewing and weighing the medical evidence, that the objective medical evidence did not support a determination of disability. Since the ALJ accurately reported the MRI findings, the Court finds he did not commit error.

## C.    Failure to Consider Certain Impairments as Severe

Plaintiff argues that the ALJ erred by failing to determine that his hypertension, diabetes, sleep apnea, and obesity were "severe" at step two. At step two, the ALJ must determine if the claimant has any severe impairment. This step acts as a filter; if no severe impairment is shown, the claim is denied. But the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two. 20 C.F.R. § 404.1520. In the Sixth Circuit, the severity determination is a "de minimis hurdle in the disability determination process." Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1998). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability, regardless of age, education and experience." Id. The goal of the test is to "screen out totally groundless claims." Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 89 (6th Cir. 1985). However, the Sixth Circuit has also stated that "[a]ccording to the regulations, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation as outlined" by 20 C.F.R. § 404.150. Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). In the Maziarz case, the Sixth Circuit held that since the Secretary "found that [claimant] suffered from the severe impairments of coronary artery disease, status post right coronary artery angioplasty and angina pectoris," the Secretary "continued with the remaining steps in his disability determination" and thus "properly could consider claimant's

cervical condition in determining whether claimant suffered the residual functional capacity to allow him to perform substantial gainful activity." <u>Id.</u>

In this case, the ALJ found Plaintiff had the following severe impairments: disorders of the back with history of pain radiating to the hips and legs, status-post 3 surgeries (Tr. 19). This conclusion allowed Plaintiff to clear step two of the analysis. The ALJ's findings as to step 2 is favorable to Plaintiff. Since he passed step 2, the ALJ continued the sequential analysis and proceeded to step three (Tr. 19-23). The fact that some of Plaintiff's impairments were not "deemed to be severe at step two is therefore totally irrelevant." <u>Anthony . Astrue</u>, 2008 WL 508008, at *5 (6th Cir. Feb. 22, 2008).

Plaintiff is correct when he asserts that the ALJ is required to assess the combined effect of a claimant's impairments when determining whether a claimant has a severe impairment or combination of impairments throughout the five-step analytical process. 20 C.F.R. § 404.1523. Specifically, the regulations provide that the ALJ, "will consider the combined effect of all of [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. However, the ALJ does not have to "use terminology such as 'combined' or 'combination' in analyzing the claimant's impairments, but the reviewing court must be able to determine that the ALJ did in fact consider the combined effect of a claimant's impairments." <u>Mansfield v. Barnhart</u>, 2005 WL 1476370, at *9 (S.D. Ind. June 14, 2005) (quoting <u>Corey v. Barnhart</u>, 2002 WL 663130 (S.D. Ind. Mar. 14, 2002)); <u>see Loy v. Sec'y of Health & Human Servs.</u>, 901 F.2d 1306, 1310 (6th Cir. 1990); <u>Gooch v. Sec'y of Health & Human Servs.</u>, 833 F.2d 589, 591-92 (6th Cir. 1987).

In this case, under step two, the ALJ concluded Plaintiff's "impairment of hypertension, a

cardiac ejection fraction of 36%, diabetes, and sleep apnea are not considered 'severe' impairments" (Tr. 20). Under step three, the ALJ concluded Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1", which then moved the ALJ to proceed to step four, in which he concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ... for a significant range of sedentary work. In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence.

(Id.).

This Court, however, cannot determine from this language whether the ALJ considered Plaintiff's back disorders with pain radiating to the hips and legs in combination with his hypertension, obesity, diabetes, and sleep apnea in determining whether he was disabled within the meaning of the regulations. Here, the ALJ's "careful consideration of the entire record" communicates only that the ALJ reviewed the entire record; it does not answer the question of whether his "careful consideration" included a consideration of Plaintiff's entire medical condition. The ALJ's analysis was confined to Plaintiff's severe impairments once he identified the other impairments as non-severe. Accordingly, the Court finds the ALJ failed to discuss any of Plaintiff's non-severe conditions in conjunction with his discussion of Plaintiff's conditions associated with his severe impairments. Moreover, the ALJ did not discuss nor credit any medical sources which considered Plaintiff's non-severe impairments. See Bledsoe v. Barnhart, 165 Fed. Appx. 408, *412 (6th Cir. Jan 31, 2006) (citing Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (stating "although the ALJ did not explicitly consider [claimant's] obesity, it was factored indirectly into the

ALJ's decision as a part of the doctors' opinions."). Accordingly, this Court finds the ALJ has not fulfilled the requirement that Plaintiff's entire medical condition must be considered and some discussion of the claims taken together should be present in the decision. Thus, the ALJ has not provided an explanation sufficient for the Court to determine whether or not his decision is supported by substantial evidence.

### D. Credibility Determinations

The Court next turns to Plaintiff's challenge to the ALJ's credibility determination. Plaintiff contends the ALJ erred in finding that he was not a credible witness and further argues that under Social Security Ruling 96-7p, the ALJ was required to consider a credibility finding made by state agency reviewing physician, Dr. Juliao, who stated his "pain and fatigue statement is credible" (Tr. 236).

In making his credibility determination, the ALJ ruled as follows:

> After considering the evidence of record, the [ALJ] finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible. ... While the claimant complains of pain of a disabling nature, he does not take any narcotic pain medication. He only takes over-the-counter Tylenol and Advil. This is inconsistent. The claimant reported that he was taken off his pain medication as he was taking too much. The claimant did testify at the hearing that he is to receive a spinal cord stimulator. As mentioned, the claimant testified that he was taken off his pain medication as he was taking too much; however, the objective evidence of record from Dr. Culbert's office indicates that on March 15, 2005, he was dismissed because he had a negative urine drug screen for 2 months while he reportedly was taking his medication. ... claimant's own testimony [reveals] that he spends the majority of his day sitting and watching television and that he can normally follow the storyline.

(Tr. 21-22).

Social Security Ruling 96-7p requires the ALJ to explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Furthermore, SSR 96-7p requires the ALJ to "consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p was designed to prevent ALJs from making adverse credibility determinations unsupported by substantial evidence or premised on flawed logic. Indoranto v. Barnhart, 374 F.3d 470, 474-75 (7th Cir. 2004).

In this case, the Court finds the ALJ failed to connect the evidence before him with his credibility conclusion. As discussed above, the ALJ failed to fully discuss and analyze the medical opinions and treatment notes of Dr. Davis, Dr. Culbert, and Dr. Dykes reflecting their judgments about the nature and severity of Plaintiff's impairment.[1] Since the regulations require the ALJ to evaluate subjective complaints of pain in conjunction with the objective medical evidence, this Court finds the ALJ's rationale as to why Plaintiff's complaints are not credible is not supported by substantial evidence. The Court is unable to tell whether the ALJ investigated all avenues that relate

---

[1]As part of his credibility analysis, the ALJ pointed to Dr. Culbert's treatment note which stated Plaintiff had a negative urine drug screen for two months while he was supposed to be on prescribed pain medication; however, the Court finds the failure to discuss the entire record of objective medical evidence results in the credibility determination not being supported by substantial evidence. This Court cannot weigh conflicting evidence, nor can it make credibility determinations, thus, it declines to speak to the negative drug screen and Plaintiff's testimony stating he was taken off prescribed pain killers because he was taking too much medication (Tr. 260)

to Plaintiff's complaints of pain because the decision offers no guidance as to whether he examined the full range of medical evidence as it relates to this claim.

While the ALJ did list Plaintiff's daily activities, which include watching television and being able to follow the story line most of the time, walking across the street to visit his daughter, and preparing himself a sandwich (Tr. 20), these activities are fairly restricted and not of a sort that necessarily undermines or contradicts a claim of disabling pain. See Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) (noting "minimal daily activities ... do not establish that a person is capable of engaging in substantial physical activity"). Given that Plaintiff indicated he does these activities as "hobbies" and "meal preparation", the Court is dubious that the level of concentration needed to perform these activities rises to the level of concentration necessary to perform gainful employment. The ALJ should have explained the "inconsistencies" between Plaintiff's activities of daily living (that were punctured with rest), his complaints of pain, and the medical evidence. Id. at 870-72.

The Court makes no ruling as to whether or not Plaintiff is credible, but only finds remand is necessary to allow for meaningful review by the Court of the ALJ's credibility determination.

### E.    *RFC Determination and VE Hypothetical*

In light of the above conclusions that the ALJ must reconsider the evidence regarding the treatment notes of Drs. Culbert, Davis, and Dykes in conjunction with Plaintiff's credibility, it is necessary also for the RFC determination to be considered on remand. The impairments that the ALJ found credible were included in his RFC determination, but the picture may change after remand, making it appropriate to keep this question open also. The same is true with respect to the hypothetical the ALJ posed to the VE. While the question he asked took into account the pain symptoms he found credible, this issue will need to be reconsidered in light of any new findings on

remand.

**V.      Conclusion**

For the reasons stated herein, it is hereby **RECOMMENDED**[2] that Plaintiff's Motion For Summary Judgment [Doc. 12] be **GRANTED** to the extent that it seeks remand under sentence four of 42 U.S.C. 405(g) and the Commissioner's Motion for Summary Judgment [Doc. 14] be **DENIED**. It is further **RECOMMENDED** that the Commissioner's decision be **REVERSED**, and that this matter be **REMANDED** for further evaluation consistent with the Court's analysis outlined above; specifically, the ALJ is to re-evaluate the medical evidence of record, and if the ALJ determines that the medical evidence continues to support a finding of non-disability, provide reasons for discounting the opinions of treating and examining sources and for finding Plaintiff not credible.

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[2]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).